UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| NINA BYTSKA, | ) | |
| | ) | |
| Plaintiff, | ) | No. 15 C 00483 |
| | ) | |
| v. | ) | |
| | ) | Judge Edmond E. Chang |
| | ) | |
| SWISS INTERNATIONAL AIR LINE LTD., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

This case arises from the dread of every airline traveler: missing a connecting flight. On January 19, 2013, Nina Bytska missed her connecting Swiss International ("Swiss") flight to Chicago, Illinois, after her Ukraine International Airlines (UIA) flight from Kiev to Zurich was delayed. She filed this lawsuit against Swiss, alleging a violation of Article 19 of the Montreal Convention and EU Regulation 261. R. 1, Compl.[1] Bytska later amended her complaint and added UIA as a defendant. R. 5, Am. Compl. Eventually, UIA was dismissed entirely, and so were the EU Regulation claims. R. 55, Order. Bytska then filed a second amended complaint, alleging that Swiss violated both Article 17 and 19 of the Montreal Convention. R. 133, Second Am. Compl. Swiss successfully moved to dismiss the Article 17 claim. R. 147, Minute Entry. Now, all that remains is the Article 19 Montreal Convention claim against

---

[1]The Court has subject matter jurisdiction under 28 U.S.C. § 1331. Citations to the record are noted as "R." followed by the docket number and the page or paragraph number.

Swiss. Swiss moves for summary judgment on this remaining claim. R. 163, Def. Mot. As explained below, the motion is granted.

**I. Background**

In deciding a motion for summary judgment, the Court must view the evidence in the light most favorable to the non-moving party; here, that is Bytska. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Bytska was scheduled to arrive in Chicago on January 19, 2013, after a trip to Ukraine. R. 164, DSOF ¶ 21.[2] To get back to Chicago, she had to take two flights: first, UIA flight PS 471 out of Kiev; and then Swiss flight LX 008 out of Zurich.[3] *Id*. The first flight, UIA PS 471, was scheduled to depart Kiev at 9:55 a.m. local time, and arrive in Zurich at 11:50 a.m. local time. *Id*. Bytska's second flight, Swiss LX 008, was scheduled to depart Zurich at 12:55 p.m. local time. *Id*. That meant Bytska had exactly 65 minutes from the time flight PS 471 was scheduled to land in Zurich until the time flight LX 008 was scheduled to depart. *Id*. She was then supposed to arrive in Chicago at 3:55 p.m. local time. *Id*. But things did not go as planned.

It started with a weather delay in Kiev. Due to overnight snow and freezing precipitation, flight PS 471 was delayed 26 minutes while the airport authority conducted runway de-icing operations, and the flight's captain engaged the onboard engine anti-ice system to remove ice from the engine blades. DSOF ¶ 23. Then, the

---

[2]Citations to the parties' Local Rule 56.1 Statements of Fact are "DSOF" for Swiss's Statement of Facts [R. 164]; "PSOF" for Bytska's Statement of Additional Facts [R. 184-3]; "Pl. Resp. DSOF" for Bytska's Response to Swiss's Statement of Facts [R. 184-2]; "Def. Resp. PSOF" for Swiss's Response to Bytska's Statement of Additional Facts [R. 186].

[3]UIA flight PS 471 operated as a codeshare flight with three airlines, including Swiss. DSOF ¶ 22.

2

flight was delayed another 33 minutes while de-icing fluid was sprayed on the plane. *Id*. Flight PS 471 finally tookoff at 10:54 a.m. local Kiev time, 59 minutes behind schedule. *Id*; DSOF ¶ 25. That meant Bytska would now only have six minutes in between flights,[4] as opposed to 65, assuming that the flight took the scheduled amount of time in the air. DSOF ¶ 21; Pl. Resp DSOF ¶ 21.

There was another obstacle: the Zurich Airport Authority required all passengers to be rescreened at security. DSOF ¶ 30. That meant that after deboarding the UIA plane, Bytska had to walk to the terminal entrance, wait in line at security, be rescreened by security, and then walk back to the departure gate for Swiss flight LX 008. *Id*. On top of it all, it was peak travel time. *Id*. After all that, Bytska finally made it to her departure gate. DSOF ¶ 32.

Once she arrived at the gate, she understood from an airline representative that the gate was closed and boarding was over. DSOF ¶ 32. The representative instructed her to go back to the registration desk to have her ticket re-registered. *Id*. Bytska followed this instruction. DSOF ¶ 36. At the registration desk, an airline representative rebooked Bytska on the next available flight to Chicago—which was not until the next day—and gave her meal, hotel, and telephone vouchers at no cost

---

[4]Swiss states that flight PS 471 arrived in Zurich at 12:47 p.m., DSOF ¶ 28, meaning it arrived eight minutes, instead of six minutes, before Bytska's next flight was scheduled to depart. Bytska denies this but does not offer any responsive evidence as to a different arrival time in her statement of facts. Pl. Resp. DSOF ¶ 28. Bytska, however, admits that flight PS 471 departed 59 minutes behind schedule at 10:54 a.m. local Kiev time, Pl. Resp. DSFO ¶ 25, and admits that flight LX 008 was scheduled to depart at 12:55 p.m. local Zurich time, *id*. ¶ 21. Reading the facts in Bytska's favor, the Court errs on the side of less time, and assumes she had six rather than eight minutes in between her flights.

3

to her. *Id*. Despite these vouchers, Bytska spent an additional $230 on food, clothing, and toiletries during her one-night stay at the Zurich Airport. DSOF ¶ 38.

Bytska finally arrived in Chicago one day later than scheduled, on Sunday, January 20, 2013. DSOF ¶ 39. When she arrived, she called her employer and advised them she would not be able to work the next day due to exhaustion and an upset stomach. *Id*. Two years later, Bytska filed this lawsuit claiming that she is entitled to compensation for economic and emotional damages, and lost wages resulting from the delay. Second Am. Compl. ¶ 57.

## II. Legal Standard

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In evaluating summary judgment motions, courts must "view the facts and draw reasonable inferences in the light most favorable to the" non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007) (cleaned up).[5] The Court may "not weigh conflicting evidence or make credibility determinations," *Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697, 704 (7th Cir. 2011) (cleaned up), and must consider only evidence that can "be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2).

---

[5]This opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

4

The party seeking summary judgment has the initial burden of showing that there is no genuine dispute and that they are entitled to judgment as a matter of law. *Carmichael v. Village of Palatine*, 605 F.3d 451, 460 (7th Cir. 2010); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Wheeler v. Lawson*, 539 F.3d 629, 634 (7th Cir. 2008). If this burden is met, the adverse party must then "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256.

### III. Analysis

Swiss argues that Bytska's claim under Article 19 cannot survive summary judgment for three reasons: (1) the UIA flight PS 471 weather delay was out of Swiss's control; (2) Swiss took all reasonable measures to rebook Bytska on the next available flight; and (3) Swiss gave Bytska complimentary hotel, meal, and telephone vouchers for use during her layover. Def. Mot. at 2. Bytska responds that flight PS 471's delayed departure is not relevant. Pl. Resp. at 7-8. Instead, Bytska argues, the cause of her delay was not being allowed to board flight LX 008 despite arriving when boarding was still, allegedly, in process. *Id*. Bytska argues, therefore, that under Article 19 of the Montreal Convention, Swiss was required to allow her to board instead of rebooking her. *Id*. at 10-13. But this argument relies on a new, never-before mentioned, assertion of fact that Bytska included in her declaration in response to summary judgment: specifically, when she got to the departure gate, "the boarding process for Swiss departing flight LX 008 was still undergoing." *Id*. (citing R. 184-4, Bytska Decl. ¶¶ 8-15). Swiss argues that Bystka's declaration should be excluded

5

because it contradicts her prior deposition testimony. Def. Reply at 10. The Court agrees.

Absent an explanation for the inconsistency, a party cannot create a "sham affidavit"—one "whose conclusions contradict prior deposition or other sworn testimony"—simply to get past summary judgment. *Dunn v. Menard, Inc.*, 880 F.3d 899, 910 (7th Cir. 2018) (quoting *Buckner v. Sam's Club, Inc.*, 75 F.3d 290, 292 (7th Cir. 1996)). But that is exactly what Bytska tries to do here. For the first time since the start of this litigation over four years ago, Bytska alleges that when she arrived at the gate for the Swiss flight, boarding was still in process. Bytska Decl. ¶9. Not once before filing the declaration in response to the summary judgment motion did Bytska mention this fact.

More importantly, the assertion of fact contradicts Bytska's deposition in this case. District courts may disregard supplemental affidavits that "contradict prior depositions or sworn testimony." *Dunn*, 880 F.3d. at 910; *see also Kopplin v. Wisconsin Cent. Ltd.*, 914 F.3d 1099, 1103 (7th Cir. 2019) ("[A] party may not create an issue of fact by submitting an affidavit whose conclusions contradict prior deposition or other sworn testimony.") (cleaned up). To be sure, this principle must be applied with care. *See Castro v. DeVry Univ., Inc.*, 786 F.3d 559, 571 (7th Cir. 2015) ("This principle must be applied with great care, though, because summary judgment is not a tool for deciding questions of credibility."); *see also Flannery v. Recording Indus. Ass'n of Am.*, 354 F.3d 632, 638 (7th Cir. 2004) (quoting *Bank of Ill. v. Allied Signal Safety Restraint Sys.,* 75 F.3d 1162, 1169–70 (7th Cir.1996)) ("A definite

6

distinction must be made between discrepancies which create transparent shams and discrepancies which create an issue of credibility or go to the weight of the evidence.") (cleaned up). Credibility and weight are issues of fact for the jury, and Courts must be careful not to "usurp the trier of facts' role" when excluding affidavits. *Castro*, 786 F.3d at 571-72. For this reason, the rule against contradictory affidavits is triggered only when the statements are "inherently inconsistent." *Id.* at 571.

That is the case here. During her deposition, Bytska testified that when she got to the departure gate, "from what [she] understood, the gate [was closed]" and "boarding [was] over." R. 122-1, Bytska Dep. Tr. at 71:15-20, 72:6-10. It is true that Bytska also testified that she saw a plane parked at the gate and believed that it was Flight LX 008. Bytska Dep. Tr. at 72:11-74:4; 81:12-83:11. But whether or not flight LX 008 was in fact parked at the departure gate, Bytska testified that she "understood" boarding was "over" and the gate was "closed." Bytska Dep. Tr. at 71:15-20, 72:6-10. Now, contrary to this testimony, Bytska tries to say that boarding was not actually over and that she personally observed passengers boarding Swiss flight LX 008. Bytska Decl. ¶¶ 8-15. This is the kind of inherent inconsistency that is barred by the rule against contradictory affidavits.

To be sure, there are exceptions to the rule: a party may introduce an affidavit that contradicts prior testimony if the affidavit explains any discrepancies, mistakes, or ambiguous testimony in earlier depositions. *See Kopplin*, 914 F.3d at 1103. But none apply here. The question that prompted Bytska's deposition testimony was straightforward: "Eventually you got to the gate … what happened then?" Bytska

7

Dep. Tr. at 71:12-14. There was nothing ambiguous or confusing about this question or Bytska's answer to it that would require clarification. *See Kopplin*, 914 F.3d at 1103 (excluding a contradictory affidavit where clarification was not necessary because the testimony was not ambiguous or confusing). Nor does Btyska's declaration offer any explanation for why she previously testified that she "understood" boarding was over and the gate was closed. So she cannot now offer the declaration and have a do-over.

With that concession in place, the only remaining issue is whether Swiss is liable for Bytska's out-of-pocket economic damages under Article 19.[6] Swiss argues that rebooking Bytska on the next available flight alone absolves it of any liability under Article 19, and that the vouchers it gave Bytska were simply complimentary add-ons not required by Article 19. Def. Motion at 16. Bytska's only argument in response is that Swiss should have and could have allowed her to board flight LX 008. Pl. Resp. at 13. But that argument has already been rejected because it is premised on the contradictory affidavit. So the Court discusses Article 19's requirements without the benefit of any argument from Bytska.

Article 19 of the Montreal Convention sets forth an airline's liability for damages caused by delays. In relevant part, the article first sets forth the general

---

[6]In addition to economic damages, Bytska seeks damages for "spoliation of her memorable trip, physical injury, loss of wages, physical discomfort, [and] loss of time." Second Am. Compl. ¶ 57. Swiss argues, and Bytska does not refute, that only economic damages are recoverable under the Montreal Convention. *See Zubko v. Aeromexico*, 2018 WL 3732688, at *2 (N.D. Ill. Aug. 6, 2018) ("[F]ederal courts have ruled that Article 19 allows for recovery of economic damages only and does not permit compensation for non-economic damages.") (collecting cases).

8

liability rule and then explains how the airline can exempt itself from a damages award:

> The carrier is liable for damage occasioned by delay in the carriage by air of passengers, baggage or cargo. Nevertheless, the carrier shall not be liable for damage occasioned by delay if it proves that it and its servants and agents took all measures that could reasonably be required to avoid the damage or that it was impossible for it or them to take such measures.

Montreal Convention Art. 19. Courts in this district have concluded that "to satisfy Article 19's requirement that all reasonable measures required to avoid the delay be taken, the defendant carrier must show that, on the whole, it took measures reasonably available and reasonably calculated to prevent the subject loss." *Pumputyte v. United Airlines, Inc.*, 2018 WL 1240314, at *3 (N.D. Ill. Mar. 9, 2018) (quoting *Dochak v. Polskie Linie Lotnicze LOT S.A.*, 2017 WL 2362570, at *8 (N.D. Ill. May 30, 2017)); *Bernfeld v. US Airways, Inc.*, 2016 WL 1583057, at *2 (N.D. Ill. Apr. 20, 2016)); *Giannopoulos v. Iberia Lineas Aereas de Espana, S.A., Operadora, Sociedad Unipersonal*, 2012 WL 5499426, at *4 (N.D. Ill. Nov. 9, 2012). The carrier need not show that it took "every possible precaution"; rather, it "need only show that it took all precautions that, in sum, were appropriate to the risk." *Id.*

As a preliminary matter, it is not clear whether the reasonable-measures defense in Article 19 requires a carrier to simply minimize the *delay*, that is, rebook a passenger (as Swiss argues), or instead do something more to minimize the passenger's *damages* caused by the delay, for example, provide a passenger with food and hotel vouchers. In other words, is minimizing the *delay* sufficient to "avoid the damage," or is more, such as providing vouchers, required? Neither the Seventh

9

Circuit nor courts in this district have addressed this question. And the Court need not do so for this case, because Bystka does not attempt to refute Swiss's argument. Plus, Swiss *did* do more here.

Swiss not only rebooked Bytska on the next available flight, it also provided her with hotel, meal, and telephone vouchers. DSOF ¶ 36; Pl. Resp. DSFO ¶ 36. This was a reasonable measure to take under the circumstances. Outside of her contradictory declaration, Bytska does not identify any alternative reasonable measure Swiss could have taken to minimize her damages. Bytska provides only a single, vague sentence that contends that Swiss's measures were unreasonable: Swiss was "indifferent to [her] travel-related needs," Bytska Decl. ¶ 1. But this is just too vague of a statement to rebut Swiss's evidence. *See Harris N.A. v. Hershey*, 711 F.3d 794, 798 (7th Cir. 2013) ("A mere scintilla of evidence in support of the nonmoving party's position is not sufficient; there must be evidence on which the jury could reasonably find for the non-moving party."). Given the evidence Swiss provided about food, dining, and telephone vouchers, a reasonable jury can only find that the measures Swiss took were reasonable to avoid the damages caused by the delay.

## IV. Conclusion

For the reasons set forth above, the Court grants Swiss's motion for summary judgment. Final judgment will be entered. The status hearing of April 3, 2019 is vacated.

ENTERED:

s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: March 28, 2019